UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANTAY M. POWELL,<br><br>    Petitioner,<br><br>v.<br><br>STU SHERMAN,<br><br>    Respondent. | Case No. 19-cv-00018-EMC<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |

## I.    INTRODUCTION

Diantay M. Powell, a prisoner currently incarcerated at Mule Creek State Prison in Ione, filed this *pro se* action for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed an answer and Mr. Powell has filed a traverse. Mr. Powell's petition is now before the Court for review on the merits. For the reasons discussed below, the petition for writ of habeas corpus will be denied.

## II.    BACKGROUND

A.   <u>The Crime</u>

The California Court of Appeal described the crime as follows:

> In the early morning hours of November 25, 2012, 18–year–old [Mr. Powell] was socializing with his cousin Antonio Edwards and their 16–year–old friend, Quincy Carter. They had consumed cough syrup, Valium and cocaine during the day and [Mr. Powell] may have snorted heroin or cocaine. At some point in the evening, [Mr. Powell] showed Carter a nine millimeter Beretta with a 30–round magazine attached.
>
> Edwards borrowed a Nissan from Albert Rich and at 5:00 a.m., they picked up 16–year old Bobbie Sartain and 15–year–old Raquel Gerstel at a Union 76 gas station in Oakland. The girls sat in the

Northern District of California

> back seat with Carter while [Mr. Powell] sat in the front passenger seat. Edwards drove the group to Brookdale Park and parked on a residential street.
>
> [Mr. Powell] received a phone call and told Sartain and Gerstel to get out of the car because he needed to go pick up his girlfriend. The girls refused. After a heated verbal argument, [Mr. Powell] got out of the car, opened the rear door on the driver's side, and pulled Sartain out of the car. Sartain punched or slapped [Mr. Powell] and he knocked her to the ground. Sartain said she was going to call the police.
>
> Gerstel got out of the car and confronted [Mr. Powell], saying, "Did you just hit my cousin?" [Mr. Powell] responded, "Bitch, I'll knock you out too." [Mr. Powell] got his gun from the passenger seat and shot Gerstel in the head; she also suffered grazing wounds to the shoulder and buttock and a gunshot wound to the hip. Sartain began to run away, pleading with [Mr. Powell] that she would not tell anyone. [Mr. Powell] shot her at least a dozen times, emptying the clip of his gun. Both Gerstel and Sartain died of their wounds.
>
> [Mr. Powell] got back inside the car and Edwards drove to West Oakland. When they returned the car to Rich, Edwards asked Rich if he had seen the news and [Mr. Powell] told Rich he had "domed a bitch," meaning he had shot a woman in the head.
>
> . . . .
>
> At trial, the defense did not dispute that Mr. Powell had shot Sartain and Gerstel, but sought to show that the killings were second degree murder or manslaughter rather than first degree murder.

*People v. Powell*, 2017 WL 6397814, *1-2 (Cal. Ct. App. Dec. 15. 2017).

B. <u>Procedural History</u>

On May 12, 2016, a jury found Mr. Powell guilty of the first degree murder of Bobbie Sartain and the second degree murder of Raquel Gerstel, with enhancements on each count for personally inflicting great bodily injury, personally and intentionally discharging a firearm, and proximately causing great bodily injury (Cal. Penal Code §§ 187, 189, 12022.5(a), 12022.53(b)-(d), (g), 12022.7(a)). CT 523-25. The jury also found a multiple murder special circumstance allegation to be true (Cal. Penal Code § 190(a)(3)). *Id*. at 526. The court sentenced Mr. Powell to an aggregate term of life in prison without the possibility of parole, consecutive to a term of sixty-five years to life in prison. CT 670.

Mr. Powell appealed. On appeal, the California Court of Appeal remanded Mr. Powell's case to give the trial court the opportunity to exercise its discretion to strike the firearm

enhancements under then-new legislation, but otherwise affirmed the judgment. *See Powell*, 2017 WL 6397814. The California Supreme Court summarily denied review. Docket No. 19-5 at 351. Mr. Powell then filed this federal habeas petition.

The petition for writ of habeas corpus in this action alleges the following claims: (1) the trial court's failure to provide "instructions relating intoxication to heat of passion" violated Mr. Powell's right to a fair trial, Pet., Docket No. 1 at 21; (2) trial counsel provided ineffective assistance of counsel by not requesting such instructions, *id.*; (3) the trial court's instruction that the jury could not consider the fact that witnesses Carter and Rich were in state custody for purposes of evaluating their credibility violated Mr. Powell's constitutional rights to due process, to present a defense, and to have the jury determine every material issue presented, *see id.* at 40, 44.

### III. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action for a writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the petition concerns the conviction and sentence of a person convicted in Alameda County, California, which is within this judicial district. 28 U.S.C. §§ 84, 2241(d).

### IV. STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

3

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the state court, if there is a reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). When confronted with an unexplained decision from the last state court to have been presented with the issue, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## V.     **DISCUSSION**

A.    CALCRIM 625

Mr. Powell asserts that his right to a fair trial was violated by the trial court's failure to sua sponte provide a jury instruction relating intoxication to heat of passion. Pet., Docket No. 1 at 21. He contends that the intoxication instruction that was given, CALCRIM 625, improperly limited the jury's consideration of the intoxication evidence because it effectively instructed jurors they could not consider intoxication in assessing heat of passion. *Id*. at 24-25. He raises this claim against his conviction for the second degree murder of Gerstel. *Id*. at 10, 38.

At trial, defense counsel conceded that Mr. Powell killed both victims, but argued that the jury should convict Mr. Powell of two counts of manslaughter because he lacked the mental state

4

necessary for first or second degree murder. RT 693-696. Mr. Powell contends that heat of passion was his main defense, there was evidence of voluntary intoxication, and therefore the jury should have been instructed to consider voluntary intoxication when assessing his subjective state of mind for the heat of passion defense. Pet., Docket No. 1 at 24, 29.

The trial court gave the following jury instruction, CALCRIM 570, concerning voluntary manslaughter and heat of passion:

> A killing that would otherwise be murder is reduced to voluntary manslaughter if defendant Diantay Powell killed someone because of a sudden quarrel or in the heat of passion. The defendant killed someone because of a sudden quarrel or in the heat of passion if:
>
> 1. The defendant was provoked; 2. As a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or judgment; AND 3. The provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment.
>
> Heat of passion does not require anger, rage, or any specific emotion. It can be any violent or intense emotion that causes a person to act without due deliberation and reflection.
>
> In order for heat of passion to reduce a murder to voluntary manslaughter, the defendant must have acted under the direct and immediate influence of provocation as I have defined it. While no specific type of provocation is required, slight or remote provocation is not sufficient.
>
> Sufficient provocation may occur over a short or long period of time. It is not enough that the defendant simply was provoked. The defendant is not allowed to set up his own standard of conduct. In deciding whether the provocation was sufficient, consider whether a person of average disposition, in the same situation and knowing the same facts, would have reacted from passion rather than from judgment.
>
> The People have the burden of proving beyond a reasonable doubt that the defendant did not kill as a result of a sudden quarrel or in the heat of passion. If the People have not met this burden, you must find the defendant not guilty of murder.

CT 558.

The trial court then gave CALCRIM 625, the jury instruction concerning voluntary intoxication:

> You may consider evidence, if any, of defendant Diantay Powell's

5

> voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted with an intent to kill, or the defendant acted with deliberation and premeditation.
>
> A person is *voluntarily intoxicated* if he or she becomes intoxicated by willingly using any intoxicating drug, drink, or other substance knowing that it could produce an intoxicating effect, or willingly assuming the risk of that effect.
>
> You may not consider evidence of voluntary intoxication for any other purpose.

CT 559.

Mr. Powell argued on appeal that CALCRIM 625 was erroneous to the extent it suggested the jury could not consider voluntary intoxication when assessing his subjective state of mind for heat of passion and voluntary manslaughter. The California Court of Appeal rejected his claim, finding any error harmless. In its order, the state appellate court first reviewed general principles of homicide law:

> Intoxication or heat of passion may render a killing a second degree murder rather than a first degree murder by negating premeditation and deliberation. (*People v. Carasi* (2008) 44 Cal.4th 1263, 1306; *see People v. Hughes* (2002) 27 Cal.4th 287, 342.)
>
> Even when a defendant has the intent to kill or conscious disregard for life, and would otherwise be deemed to have acted with malice aforethought, a homicide may be further reduced to voluntary manslaughter in limited, explicitly defined circumstances that are viewed as negating malice: (1) heat of passion arising from provocation that would cause a reasonable person to react with deadly passion, or (2) an unreasonable but good faith belief in the need to act in self-defense (imperfect self-defense). (*People v. Moye* (2009) 47 Cal.4th 537, 549 (*Moye* ); *People v. Lasko* (2000) 23 Cal.4th 101, 107–109.) The heat of passion variant of voluntary manslaughter (the only one at issue in this case) has both a subjective and objective component: (1) the defendant must have killed while actually in the heat of passion induced by the provocation, and (2) the provocative conduct must be such that a reasonable person would have reacted rashly or without due deliberation and reflection. (*Moye, supra*, 47 Cal.4th at pp. 549–550.) With respect to the objective component, the question is whether "'an average, sober person would be so inflamed that he or she would lose reason and judgment.'" (*People v. Manriquez* (2005) 37 Cal.4th 547, 586; *see People v. Steele* (2002) 27 Cal.4th 1230, 1253; *People v. Oropeza* (2007) 151 Cal.App.4th 73, 83 (*Oropeza*).)

*Powell*, at *3. The state appellate court then denied Mr. Powell's claim, explaining that:

> The version of CALCRIM No. 625 given in this case correctly

> informed the jury that intoxication could negate the mental states of premeditation and intent to kill. [Mr. Powell] argues the instruction was misleading to the extent it precluded the use of such evidence "for any other purpose," because this suggested intoxication could not be used to determine whether he acted in a heat of passion, and in fact, intoxication is admissible for this purpose. But assuming that a defendant charged with murder may appropriately argue he acted in a heat of passion that was fueled by intoxication, this subjective heat of passion will only reduce a killing from murder to voluntary manslaughter when the provocation is objectively sufficient to provoke a reasonable person. (*Oropeza, supra*, 151 Cal.App.4th at p. 83.) Such evidence was lacking in this case, and renders harmless any defect in CALCRIM No. 625.
>
> Sartain hit or slapped [Mr. Powell] when he yanked her out of the car, and Gerstel confronted [Mr. Powell] verbally, but neither did anything that would provoke a reasonable person to act out of passion. "A provocation of slight and trifling character, such as words of reproach, however grievous they may be, or gestures, or an assault, or even a blow, is not recognized as sufficient to arouse, in a reasonable man, such passion as reduces an unlawful killing with a deadly weapon to manslaughter." (*People v. Najera* (2006) 138 Cal.App.4th 212, 226.) A defendant may not "set up his own standard of conduct and justify or excuse himself because in fact his passions were aroused, unless further the jury believe that the facts and circumstances were sufficient to arouse the passions of the ordinarily reasonable man." (*Oropeza*, supra, 151 Cal.App.4th at pp. 82–83.) Given the weakness of the evidence concerning the objective component of heat of passion/provocation, the failure to give an instruction explicitly allowing the jury to consider intoxication in connection with the subjective component was harmless under any standard. (*See People v. Thomas* (2013) 218 Cal.App.4th 630, 642 [failure to instruct on heat of passion implicates federal constitution and must be evaluated under harmless-beyond-a-reasonable-doubt standard of *Chapman v. California* (1967) 386 U.S. 18, 36]; *People v. Mendoza* (1998) 18 Cal.4th 1114, 1134–1135 [failure to adequately instruct on effect of intoxication was state law error that did not require reversal unless a more favorable result was reasonably probable absent the error, pursuant to *People v. Watson* (1956) 46 Cal.2d 818, 836].) Reversal is not required.

*Powell*, at *3-4.

As the last reasoned decision from a state court, the California Court of Appeal's decision is the decision to which § 2254(d) is applied. *See Wilson*, 138 S. Ct. at 1192. Mr. Powell is entitled to habeas relief only if the California Court of Appeal's decision was contrary to, or an unreasonable application of, clearly established federal law from the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented.

To obtain federal habeas relief for an error in the jury instructions, a petitioner must show

7

that the error "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). A jury instruction violates due process if it fails to give effect to the requirement that "the State must prove every element of the offense." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). "A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.* (quoting *Boyde v. California*, 494 U.S. 370, 378 (1990)). "Even if there is some 'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (quoting *Middleton*, 541 U.S. at 437).

Where a potentially defective instruction is at issue, the court must inquire whether there is a "reasonable likelihood" that the jury applied the challenged instruction in a way that violates the Constitution. *Estelle*, 502 U.S at 72 & n.4; *Boyde*, 494 U.S. at 380. Even if there is a constitutional error in the instructions, habeas relief is not available unless the error had a substantial and injurious effect or influence in determining the jury's verdict. *Calderon v. Coleman*, 525 U.S. 141, 146-47 (1998); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

The California Court of Appeal cited the harmless error standard from *Chapman v. California*, 386 U.S. 18, 36 (1998), in reaching its conclusion that any error was harmless under any standard. Under *Chapman*, "before a federal constitutional error can be harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24. "[H]abeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice." *Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) (citing *Brecht*, 507 U.S. at 637 (internal quotation marks omitted). When, as here, a state court finds an error harmless, that determination is reviewed under the highly deferential AEDPA standard. *Id*. at 2198. This means that habeas relief is not available for the error "unless *the harmlessness determination itself* was unreasonable." *Id.* at 2199 (quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007).

Mr. Powell contends that CALCRIM 625 improperly limited the jury's consideration of the evidence of voluntary intoxication and jurors should have been given an instruction relating

8

voluntary intoxication to heat of passion. Mr. Powell contends the jury should have been instructed to consider voluntary intoxication when assessing his subjective state of mind for the heat of passion defense. Pet., Docket No. 1 at 27-28. He did not, however, propose an instruction that should have been given to rectify the error. He contends that the error was not harmless because the jury was confused and trying to determine how voluntary intoxication related to heat of passion, as evidenced by the following question that the jury posed during deliberations: "Regarding instruction 570: If we determine defendant was voluntarily intoxicated, do we consider that intoxication when applying the standard of a person of 'average disposition?'"[1] CT 516. The trial judge responded by directing the jury to review CALCRIM 570 *and* 625. *Id.* Mr. Powell contends that this question, along with the length of jury deliberations,[2] show that the error was not harmless because the jury must have been struggling with how to apply voluntary intoxication to heat of passion. Pet., Docket No. 1 at 36-38.

The state appellate court determined that heat of passion can reduce a killing to voluntary manslaughter only "when the provocation is objectively sufficient to provoke a reasonable person"; given the "weakness of the evidence concerning that objective component"; any failure to instruct the jury on consideration of intoxication "in connection with the subjective component was harmless under any standard." That determination was not unreasonable. *Powell*, at *3-4.

A witness testified that after being told by Mr. Powell to get out of the car, the victims "made a fuss." RT 211. Mr. Powell pulled one victim (Sartain) out of the car. RT 214. Sartain then hit Mr. Powell in the face and Mr. Powell responded by hitting her back, knocking her to the ground. *Id*. The other victim (Gerstel) then got out of the car and asked, "Did you just hit my

---

[1] On the same note that jury also asked: "would a victim's retaliatory reaction (striking defendant) to his assault on her be considered provocation? In considering whether the defendant 'reacted from passion' do we consider the level of reaction?" *Id*.

[2] The jury deliberated for approximately ten hours following eight days of trial. CT 413, 504-21. Here, given that there were two victims, and special findings questions that had to be answered for each of them, the 10-hour deliberations period, although not insignificant, does not render the state appellate court's harmless error determination unreasonable. *See e.g. United States v. Lopez*, 500 F.3d 840 (9th Cir. 2007) (jury's deliberation for 2.5 hours on illegal reentry case suggested any error in allowing testimony or commentary on defendant's post-arrest silence was harmless); *United States v. Velarde-Gomez*, 269 F.3d 1023, 1036 (9th Cir. 2001) (jury deliberations for 4 days supported inference that impermissible evidence affected deliberations).

cousin?" RT 216. Mr. Powell responded, "Bitch, I'll hit you up too," got his gun from the car, and shot Gerstel multiple times. RT 216-20. He then followed Sartain up the street (after their physical exchange), shooting her as she ran away from him pleading for her life. *Id.*; RT 291-92.

There was no evidence, and certainly no substantial evidence, of sufficient provocation to satisfy the objective component of heat of passion which requires that the "'average sober person would be so inflamed that he or she would lose reason and judgment.'" *People v. Manriquez*, 37 Cal.4th 547, 586 (2005) (quoting *People v. Lee*, 20 Cal.4th 47, 60 (1999). Notwithstanding the jury's question as to voluntary intoxication, in light of the weakness of the evidence of provocation, the Court of Appeals could reasonably have determined the jury must have found there was not sufficient provocation to reach the subjective prong of heat of passion. The California Court of Appeal's harmless error determination was not itself unreasonable. *See Davis*, 135 S. Ct. at 2199. Mr. Powell therefore is not entitled to the writ on this claim.

B.  Ineffective Assistance of Counsel Claim

Mr. Powell claims that his trial counsel was ineffective for failing to request the jury instruction discussed above, relating voluntary intoxication to heat of passion. Pet., Docket No. 1 at 31. He raised his ineffective assistance of counsel claim on direct appeal. Docket No. 19-5 at 191.

The California Court of Appeal, in a footnote, stated that it need not consider Mr. Powell's ineffective assistance of counsel claim. *Powell*, at n.2. This Court assumes that the state court's footnote means that they declined to reach the ineffective assistance of counsel claim. When the state court explicitly declines to decide an issue, as opposed to simply not mentioning it, review is de novo. *See Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

The Sixth Amendment's right to counsel guarantees not only assistance, but effective assistance, of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.* In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish two things. First, he must demonstrate that counsel's performance was deficient

10

and fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See id.*, at 689. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. *See Strickland*, 466 U.S. at 697

Mr. Powell's ineffective assistance of counsel claim fails. Mr. Powell contends that counsel was ineffective for failing to request an unspecified jury instruction relating voluntary intoxication to heat of passion. He cites *People v. Cameron*, 30 Cal.App.4th 591 (Cal. Ct. App. 1994), in which the court commented that: "Intoxication is a circumstance from which the jury might find that defendant's act in response to the provocation should be attributed to passion rather than judgment." *Id*. at 601. [3]

Even if Mr. Powell could show that his counsel's performance was deficient, his claim fails under *Strickland's* prejudice prong. Even applying de novo review, for the reasons stated above, there was no objective evidence of provocation sufficient to give rise to a heat of passion defense.

Under the undisputed facts regarding Ms. Sartain and Ms. Gerstel's interaction with Mr.

---

[3] In *Cameron*, the court reversed the defendant's conviction for second degree murder, because the jury received CALJIC former No. 4.20 (voluntary intoxication does not render an act less criminal, and voluntary intoxication is not a defense to general criminal intent). The court found this instruction misleading because it implied that the jury should disregard evidence of voluntary intoxication "for purposes of determining whether the defendant acted with actual knowledge of life endangerment and conscious disregard for life." Relying on *People v. Whitfield*, 7 Cal.4th 437 (1994), the court held that because second degree murder with implied malice is a specific intent crime within the meaning of (former) Cal. Penal Code section 22(b)), voluntary intoxication was material to a finding of implied malice, where that is an element of second degree murder. *Id*. at 599-600. In 1995, section 22 was amended to permit evidence of voluntary intoxication as to express malice, but not implied malice, in murder cases, specifically to overrule *Whitfield*. *See People v. Soto*, 4 Cal.5th 968, 976-977 (2018).

11

Powell, no jury could reasonably conclude that the "'average sober person would be so inflamed that he or she would lose reason and judgment.'" *Manriquez*, 37 Cal.4th at 586. Accordingly, Mr. Powell has not shown that that there was a "reasonable probability" that the "result of the proceeding would have been different" had counsel requested the extra instruction. *Strickland*, 466 U.S. at 694.

Mr. Powell also argues that defense counsel was ineffective for failing to request a jury instruction concerning how provocation may reduce a murder charge from first to second degree, as well as instructions on second degree murder and manslaughter. Docket No. 23, at 1-3. But the jury did receive each of these instructions. CT 555-58. He also argues that defense counsel should have requested to have the charges changed, Docket No. 23 at 3. He does not, however, show that this was something defense counsel had the legal ability to do. *Cf. United States v. Armstrong*, 517 U.S. 456, 464 (1996) (subject to constitutional constraints, the decision whether to prosecute and what charges to bring generally rests entirely with the prosecutor's discretion).

Accordingly, Mr. Powell has not shown that trial counsel provided ineffective assistance of counsel. He is not entitled to the writ on this claim.

C.  CALCRIM 337

Mr. Powell claims that the use of the CALCRIM 337 jury instruction violated his constitutional right to due process, to present a defense, and to have the jury determine every material issue presented because the instruction prevented the jury from considering how the custody status of two witnesses impacted their credibility. Pet., Docket No. 21 at 40, 44.

"Quincy Carter was a friend of [Mr. Powell's] who was called as a prosecution witness and testified about the events leading up to and including the shooting. Albert Rich was called by the prosecution and testified about incriminating statements made by [Mr. Powell] after the shooting. Both Carter and Rich were taken into custody to secure their presence at trial, and both testified to this fact." *Powell,* at *4. Mr. Powell argues that because they were in state custody, both witnesses had an incentive to support the state's theory of the case, even though Carter's testimony tended to support the defense and Rich's testimony tended to support the prosecution. Mr. Powell therefore contends that the fact that Carter was in custody made him more credible and

12

the fact that Rich was in custody made him less credible, but that CALCRIM 337 prevented the jury from considering how both witnesses' custody status impacted their credibility. *Id*. at 44.

At trial the judge gave the CALCRIM 337 jury instruction: "When Albert Rich and Quincy Carter testified, they were in custody. The fact that a witness is in custody does not by itself make the witness more or less believable. Evaluate the witness's testimony according to the instructions I have given you." CT 549. The judge also gave the jury CALCRIM 226, a general instruction about evaluating the credibility of a witness. This instruction told the jury that in evaluating a witness's testimony, "you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony." CT 537. CALCRIM 226 then gave a list of twelve factors that jurors may consider, including: how well the witness could see or hear the things about which the witness testified, the witness's behavior while testifying, whether the witness's testimony was influenced by a factor such as a personal relationship with someone involved in the case or a personal interest in how the case is decided, and whether the witness had a felony conviction. *Id*.

The California Court of Appeal rejected Mr. Powell's challenge to the giving of CALCRIM 337:

> The jurors knew why Carter and Rich were in custody—to secure their testimony—and were not told they could not discuss their custody status. (*See People v. Mackey* (2015) 233 Cal.App.4th 32, 114 [CALCRIM No. 337 did not preclude jury from considering prosecution witness's felony convictions or status as an accomplice, pursuant to other instructions].) Rather, the jurors were told the mere fact the witnesses were in custody did not, in and of itself, make them more or less believable, and that credibility determinations should be made in accordance with other jury instructions. The court gave CALCRIM No. 226, regarding the factors to consider when evaluating witness credibility.

*Powell*, at *4.

The California Court of Appeal rejected Mr. Powell's challenge to CALCRIM 337 on the merits, finding that it was an accurate statement of state law. *Id*. The California Court of Appeal did not discuss Mr. Powell's federal constitutional claim. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 526 U.S. 86, 99 (2011); *see also Johnson v.*

13

*Williams*, 568 U.S. 289, 300-301 (2013) (when a state court rejects a federal claim without expressly addressing it, federal habeas courts must presume the federal claim was adjudicated on the merits and review it deferentially).

Because the state court denied the federal constitutional claim on the merits without explanation, this Court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the U.S. Supreme] Court." *Harrington*, 562 U.S. at 102. Mr. Powell is entitled to habeas relief only if the California Court of Appeal's decision was contrary to, or an unreasonable application of, clearly established federal law from the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented.

To obtain federal habeas relief for an error in the jury instructions, a petitioner must show that the error "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. A jury instruction violates due process if it fails to give effect to the requirement that "the State must prove every element of the offense." *Middleton*, 541 U.S. at 437. "A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.* (quoting *Boyde*, 494 U.S. at 378). "Even if there is some 'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation." *Waddington*, 555 U.S. at 190 (quoting *Middleton*, 541 U.S. at 437). Where a potentially defective instruction is at issue, the court must inquire whether there is a "reasonable likelihood" that the jury applied the challenged instruction in a way that violates the Constitution. *Estelle*, 502 U.S at 72 & n.4; *Boyde*, 494 U.S. at 380. Even if there is a constitutional error in the instructions, habeas relief is not available unless the error had a substantial and injurious effect or influence in determining the jury's verdict. *Calderon*, 525 U.S. at 146-47; *Brecht*, 507 U.S. at 637.

Mr. Powell argues that giving the jury CALCRIM 337 precluded it from fully considering the facts motivating Carter and Rich's testimony, and that this was akin to the trial court precluding defense counsel from examining either Carter or Rich about being in custody, which

14

was recognized as a constitutional error in *Davis v. Alaska*, 415 U.S. 308 (1974). However, *Davis v. Alaska* is distinguishable. In that case, the U.S. Supreme Court held that the petitioner was denied his rights under the Confrontation Clause of the Sixth Amendment when the state trial court prohibited the defense from questioning a key prosecution witness about the witness's juvenile record and probation status. *Id*. at 318. Here, in contrast, the jury knew that Carter and Rich were in custody to secure their testimony. The trial judge did not preclude questioning about their custody status, nor did the judge tell the jury that it could not consider their custody status. The judge merely gave an instruction telling the jury that custody status *alone* was not determinative of credibility.

The California Court of Appeal reasonably could have concluded that there was no reasonable likelihood that the jury applied CALCRIM 337 in a way that violated the Constitution. As the state appellate court noted, the instruction did not preclude the jury from discussing or considering Carter and Rich's custody status; rather, it simply cautioned that their custody status alone did not make them more or less believable, and that the jury should make its credibility determination in accordance with other jury instructions. The jury was also given CALCRIM 226, a general instruction about evaluating the credibility of a witness. This instruction told the jury that in evaluating a witness's testimony, "you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony." CT 537. The jury is presumed to have followed these instructions. *See Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985) ("The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them"); *Townsend v. Knowles*, 562 F.3d 1200, 1209 (9th Cir. 2009) ("The law presumes that the jury follows the instructions given.") (abrogated on other grounds by *Walker v. Martin*, 562 U.S. 307 (2011)). Mr. Powell provides no reason for this Court to depart from the presumption that the jurors followed their instructions. Following the instructions, the jury would have been free to consider how the custody status of Carter and Rich, and other factors, could affect their credibility.

Mr. Powell has not shown that giving CALCRIM 337 "so infected the entire trial that the

resulting conviction violates due process." *Estelle*, 502 U.S. at 72. The instruction, which merely cautioned the jury that custody status alone did not make a witness more or less credible, did not relieve the prosecutor of proving every element of the charged offense. Nor did it infect the entire trial. It was therefore not unreasonable for the state appellate court to reject Mr. Powell's challenge to CALCRIM 337. He is not entitled to habeas relief on this claim.

1. No Certificate Of Appealability

A certificate of appealability will not issue because reasonable jurists "would not find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability is denied.

## VI. CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**.

Mr. Powell's renewed motion for appointment of counsel, filed months after he filed his traverse, is **DENIED**. Docket No. 28. There is no need to appoint counsel in this action which is now being closed. The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: January 16, 2020

EDWARD M. CHEN
United States District Judge